UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| SHERI W HEAD, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:17-CV-00426 |
| | § | |
| LAS VEGAS SANDS, LLC; dba THE | § | |
| VENETIAN RESORT HOTEL | § | |
| CASINO/THE PALAZZO RESORT | § | |
| HOTEL CASINO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION

The Court now considers Las Vegas Sands, LLC d/b/a the Venetian Resort Hotel Casino/the Palazzo Resort Hotel Casino (the "Venetian");[1] MGM Grand Hotel, LLC ("MGM Hotel");[2] MGM Resorts International Inc., ("MGM Resorts"),[3] Desert Palace, Inc., d/b/a/ Caesar's Palace ("Caesar's Palace");[4] Desert Palace LLC ("Desert Palace");[5] Harvey's Tahoe Management Company, Inc., d/b/a Harrah's Casino Hotel Lake Tahoe ("Harrah's"); and Caesars Entertainment Corporation's ("Caesars Entertainment")[6] (collectively "Defendants") motions to dismiss for lack of personal jurisdiction.[7] The Court also considers Sheri and Haylee Head's ("Plaintiffs") responses,[8] and Defendants' replies.[9] After duly considering the record and relevant authorities, the Court **GRANTS** Defendants' motions, and **DISMISSES** the case **WITHOUT PREJUDICE** for lack of personal jurisdiction over Defendants.

---

[1] Dkt. No. 4.
[2] Dkt. No. 5.
[3] *Id.*
[4] Dkt. No. 6.
[5] *Id.*
[6] *Id.*
[7] Dkt. Nos. 4–6.
[8] Dkt. Nos. 12–14.
[9] Dkt. Nos. 23–25.

# I.    BACKGROUND

This case arises because William Washington Head Jr. ("Decedent")—a high-stakes Las Vegas gambler—tragically committed suicide after plunging into debt.[10] Plaintiffs allege that Defendants lured Decedent into debt (and thus into psychological distress and ultimately suicide) by enticing him to gamble in Las Vegas and extending large lines of credit for him to use in the process.[11] The alleged enticements included: over $1 million dollars of "customer retention" rebates,[12] free first-class travel, luxurious accommodations, luxury items, vacations, food, and beverages.[13] Allegedly, Defendants "were aware of the amount of money [Decedent] had received in casino credit and were aware of his huge gambling losses, and they continued to extend additional credit to him, pushing him further into a never ending spiral of debt."[14]

Decedent's estate entered probate in the Hidalgo County Probate Court.[15] Defendants thereafter "filed suit in the pending probate case seeking to enforce their alleged claims on [Decedent's] estate."[16] In response, Plaintiffs—Decedent's heirs—filed the instant suit against Defendants in the Hidalgo County Probate Court, alleging wrongful death and intentional infliction of emotional distress ("IIED"), employing the Texas survival statute as a vehicle for relief.[17] Defendants subsequently removed[18] and filed the instant motions to dismiss for lack of personal jurisdiction.[19] Plaintiffs responded,[20] and Defendants replied,[21] rendering the motions ripe for review. The Court now turns to its analysis.

---

[10] Dkt. No. 1-2 pp. 7–8.
[11] *Id.*
[12] Dkt. No. 12-1 ¶ 9.
[13] *Id.* p. 7.
[14] *Id.* p. 8.
[15] Dkt. No. 12 p. 3.
[16] *Id.*
[17] *See* Dkt. No. 1-2.
[18] Dkt. No. 1.
[19] Dkt. Nos. 4–6.
[20] Dkt. Nos. 12–14.

## II.    PRELIMINARY MATTERS

The Court first addresses some preliminary matters concerning the ripeness of the instant motions, as well as the scope of the Court's personal jurisdictional analysis.

### A.    *Plaintiffs' request for jurisdictional discovery*

Embedded within Plaintiffs' responses to the instant motions are requests for jurisdictional discovery.[22] In the Rule 12(b)(2) context, a Court has discretion to permit a party to conduct jurisdictional discovery.[23] However, the movant must make a "preliminary showing of jurisdiction" which includes "factual allegations that show with reasonable particularity the possible existence of [personal jurisdiction]."[24] Furthermore, the movant must "[1] identify the discovery needed, [2] the facts expected to be obtained thereby, and [3] how such information would support personal jurisdiction."[25]

Here, for reasons further discussed below, Plaintiffs fail to make a preliminary showing of jurisdiction. Moreover, their requests for jurisdictional discovery contain no rationale or accompanying explanation as to what facts are likely to be discovered which would meaningfully support personal jurisdiction. Plaintiffs' briefing does contain certain unsupported jurisdictional allegations, but—as further discussed below—they are of no consequence, even *if* they were to be supported by future discovery. For these reasons, Plaintiffs' requests for jurisdictional discovery are **DENIED**. Consequently, the instant motions are ripe for review.

---

[21] Dkt. Nos. 23–25.
[22] Dkt. No. 12 ¶ 31; Dkt. No. 13 ¶ 31; Dkt. No. 14 ¶ 31.
[23] *See Fiduciary Network, LLC v. Buehler*, 2015 WL 2165953, at *4 (N.D. Tex. May 8, 2015) (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014)).
[24] *Buehler*, 2015 WL 2165953, at *4.
[25] *Id.* ("quoting *Evergreen Media Holdings, LLC v. Safran Co.*, 2014 WL 7272292, at *3 (S.D. Tex. Dec.18, 2014)); *see also Safran Co.*, 68 F. Supp. 3dat 685 ("Plaintiffs have asked for a continuance and jurisdictional discovery if the Court finds they have not met their burden of establishing a prima facie case of personal jurisdiction. However, the Court finds they have also not met the standard for such discovery. They have not described what facts they expect to discover and how that information would support jurisdiction . . . .").

### B.    *Defendants' motions to strike Sheri Head's affidavit*

Sheri Head's two-page affidavit is Plaintiffs' only evidence supporting personal jurisdiction.[26] Defendants present objections to this affidavit and move to strike it.[27] Specifically, Defendants contend that the affidavit does not comply with Federal Rule of Civil Procedure 56, and that certain statements contained within it are substantively inadmissible hearsay, conclusory, and inadmissible under (uniquely) applicable state evidence rules.[28]

Defendants each cite a single Fifth Circuit case—*Johnston v. Multidata Sys. Int'l Corp.*[29]—for the proposition that a plaintiff's personal jurisdiction evidence must meet Rule 56 standards.[30] However, *Johnston* simply does not support this proposition. The Court cannot otherwise find any cases within the Fifth Circuit supporting this proposition. Importantly, the instant motions were filed under Rule 12(b)(2), not Rule 56. Thus, Rule 56 evidentiary standards do not directly apply to Plaintiffs' evidence, and Defendants' Rule 56-based objections to Sheri Head's affidavit are unavailing.

Moreover, the general rules of evidence concerning admissibility (*e.g.*, the rule against hearsay etc.) do not apply in the Rule 12(b)(2) context. Case law within the Fifth Circuit is very scant on this issue, but the only district court which appears to have directly addressed it held that a plaintiff's supporting evidence does not need to be admissible to be considered at the Rule 12(b)(2) stage: "Whether the evidence submitted . . . will ultimately be admissible at the trial is not relevant at this stage of the proceedings."[31] The underlying rationale is two-fold. *First*, where, as here, the Rule 12(b)(2) motion is ruled on without an evidentiary hearing, the plaintiff

---

[26] *See* Dkt. Nos. 12-1, 13-1, and 14-1.
[27] Dkt. No. 23 p. 7; Dkt. No. 24 p. 6; Dkt. No. 25 p. 6.
[28] Dkt. No. 23 pp 7–11; Dkt. No. 24 pp. 6–11; Dkt. No. 25 pp. 6–11.
[29] 523 F.3d 602, 609 (5th Cir. 2008).
[30] Dkt. No. 23 p. 2, n.3; Dkt. No. 24 p. 2, n.3; Dkt. No. 25 p. 2, n. 2.
[31] *Cantu v. TitleMax, Inc.*, 2015 WL 4526987, at *2 (W.D. Tex. July 23, 2015) (citing *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008)); *Francis v. API Tech. Servs., LLC*, 2014 U.S. Dist. LEXIS 127129 at 5 (E.D. Tex. Sept. 11, 2014)).

only needs to set forth a prima facie case of personal jurisdiction.[32] This is less than a preponderance of the evidence.[33] *Second*, and more importantly, Rule 12(b)(2) movants can ultimately hold the plaintiff to his/her burden of establishing personal jurisdiction by a preponderance of the evidence (and subject to the Federal Rules of Evidence) at trial.[34]

One district case has applied the Federal Rules of Evidence to a plaintiff's Rule 12(b)(2) evidence.[35] However, that court launched into the objections to the plaintiff's Rule 12(b)(2) evidence *without addressing* the predicate question of whether the Federal Rules of Evidence apply.[36] That court cited no authority or rationale for this approach, and it ignored persuasive authority to the contrary. It did cite a Fifth Circuit opinion for the proposition that "the court may consider *admissible* affidavits and other materials"[37] in the 12(b)(2) context. However, the cited authority does not itself indicate that a plaintiff's Rule 12(b)(2) evidence must be admissible.

The Fifth Circuit has indicated that in the Rule 12(b)(2) context, a plaintiff's hearsay statements contained within an affidavit may not be considered, *so long* as those statements are "directly contradicted by defendants' affidavits."[38] However, Defendants have not submitted any affidavits directly contradicting relevant hearsay statements contained within Sheri Head's affidavit. Thus, those hearsay statements may still be considered consistent with Fifth Circuit precedent. Nevertheless, the Court need not consider any of Plaintiffs' conclusory statements, even if uncontroverted.[39] *Except insofar as this may be the case* (the Court will make it clear

---

[32] *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) ("The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices.").
[33] *Id*.
[34] *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 399 (5th Cir. 2009).
[35] *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, 2017 WL 2730739, at *2–3 (S.D. Tex. June 26, 2017).
[36] *Id*. at 3.
[37] *Id*. at 2 (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).
[38] *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed. Appx. 628, 631 (5th Cir. 2015).
[39] *Id*. ("In evaluating whether the plaintiffs have presented a prima facie case of personal jurisdiction, we will not "credit conclusory allegations, even if uncontroverted.").

when and if it is), Defendants' objections and motions to strike Sheri Head's affidavit are **DENIED**. The Court now turns to the legal standard governing the instant motions.

### III. LEGAL STANDARD

#### A. *General framework*

Rule 12(b)(2) authorizes dismissal based on the defense that a court lacks jurisdiction over the defendant.[40] The plaintiff bears the burden of establishing personal jurisdiction over foreign defendants,[41] but need only establish a prima facie showing of personal jurisdiction to survive a motion to dismiss when there is no evidentiary hearing.[42] A prima facie showing is less demanding than proof by a preponderance of the evidence.[43] Such a showing can be made using any recognized discovery method.[44] Absent a hearing, the court must accept as true any non-conclusory jurisdictional allegations in the plaintiff's complaint and resolve all factual conflicts presented by the parties' submitted evidence in the plaintiff's favor.[45] However, courts should not countenance vague, overgeneralized, or otherwise conclusory allegations.[46]

Two conditions must be met to establish personal jurisdiction: "(1) the forum state's long-arm statute [must confer] personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction [must] compl[y] with the due process requirements of the Fourteenth Amendment of the United States Constitution."[47] The first step in the analysis can generally be

---

[40] *See* Fed. R. Civ. P. 12(b)(2).

[41] *See Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990).

[42] *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

[43] *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

[44] *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

[45] *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed. Appx. 628, 631 (5th Cir. 2015) ("[W]e must determine whether the plaintiffs have established a prima facie case of personal jurisdiction through non-conclusory allegations supported by admissible evidence.") (emphasis added); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

[46] *See Suckafree Records v. OarFin Distribution*, 2013 WL 12158149, at *7 (S.D. Tex. May 7, 2013); *Blue Spike, LLC v. Texas Instruments, Inc.*, 2014 WL 11858192, at *4 (E.D. Tex. Mar. 18, 2014); *Bar Group, LLC v. Bus. Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, 561 (S.D. Tex. 2017).

[47] *A.T.N. Indus., Inc. v. Gross*, 2016 WL 362309, at *6 (S.D. Tex. Jan. 29, 2016) (citing *Irving v. Owens–Corning Fiberglas Corp.*, 864 F.2d 383, 385 (5th Cir. 1989)).

ignored in Texas federal courts because the Texas long-arm statute is purportedly co-extensive with Fourteenth Amendment Due Process.[48] Thus, if the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment, which it must, then the analysis is complete because personal jurisdiction automatically exists under the Texas long-arm statute, and both elements are thus simultaneously satisfied.[49]

In turn, constitutional Due Process is satisfied if the foreign defendant "(1) has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice."[50] There is no need to proceed to the second prong if the first is not satisfied. The first prong—"minimum contacts"—can be established in two ways: specific jurisdiction or general jurisdiction.

### B.    *Specific jurisdiction*

The first manner Due Process "minimum contacts" may be established is through specific jurisdiction,[51] which requires, among other things, that the nonresident defendant "has purposefully directed [his] activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."[52] The Fifth Circuit has set forth a three-step analysis for determining whether specific jurisdiction exists:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-

---

[48] *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

[49] *Id.*

[50] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citations and internal quotation marks omitted).

[51] *Maner v. Health*, 2016 WL 5394266, at *2 (S.D. Tex. Sept. 27, 2016) (citing *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)).

[52] *Walk Haydel & Associates, Inc., Co.*, 517 F.3d at 243.

related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[53]

With regard to the *first* element—purposeful availment—whether minimum contacts exist is a fact-intensive inquiry that ultimately reduces to whether the Defendant *could reasonably anticipate being haled into the courts in the forum*.[54] A defendant "must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . ."[55]

Consequently, "[j]urisdiction must not be based on the fortuity of one party residing in the forum state."[56] For example, a forum court may not have specific personal jurisdiction over a foreign defendant that negotiates, executes and even carries out portions of a contract with the claimant within the forum—even in a breach of contract case.[57] This was the case in *Harvey*, where even lopping on systematic communications by the foreign defendant to the Texas plaintiff did not make any difference.[58] The reason for this outcome is that the foreign defendant's contacts with the forum amounted to nothing more than the "mere fortuity that [the plaintiff] happens to be a resident of the forum."[59] This logic has been crystalized in Fifth Circuit precedent since *Harvey*.[60]

With regard to the *second* element—whether the plaintiff's claim arises out of the foreign defendant's in-forum conduct—the contours are less clear. What is clear is that the plaintiff's claims must "arise" from the defendant's conduct in the forum state. However, claims rarely

---

[53] *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 675 (S.D. Tex. 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).
[54] *Safran Co.*, 68 F. Supp. 3d at 675.
[55] *Id.* at 675 (emphasis added) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)); *see also Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007).
[56] *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009).
[57] *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).
[58] *Id.*
[59] *Id.*
[60] *See Moncrief Oil Intern., Inc.*, 481 F.3d at 312; *Cardinal Health Solutions, Inc. v. St. Joseph Hosp. of Port Charlotte, Fla. Inc.*, 314 Fed. Appx. 744, 745 (5th Cir. 2009); *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).

have a single contributing cause, and certain contributing causes play less pronounced roles than others in bringing claims about. Thus, the relevant question is this: how directly and strongly must a foreign defendant's in-forum conduct contribute to the plaintiff's claim in order for that claim to have "arisen" from the foreign defendant's in-forum conduct?

Different Circuits take different approaches, and the Fifth Circuit has not recently answered this question in a manner as definitive as other circuits.[61] Nevertheless, available Fifth Circuit precedent,[62] Texas district courts,[63] other circuits,[64] and legal scholarship[65] all indicate that the Fifth Circuit has adopted the "but-for" test. This test "as the name indicates . . . is satisfied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts."[66]

### C.  *General jurisdiction*

The second form of "minimum contacts" is general jurisdiction,[67] which is established when the foreign defendant's contacts with the forum state are so extensive and substantial as to render the defendant effectively "at home" in the forum state.[68] The test for general jurisdiction is very demanding because the forum-contacts in question do not give rise to the claims at bar.

---

[61] *Breathwit Marine Contractors, Ltd. v. Deloach Marine Services*, LLC, 994 F. Supp. 2d 845, 850–853 (S.D. Tex. 2014).

[62] *See Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n.21 (5th Cir. 1981); *see also Trinity Indus.., Inc. v. Myers & Assoc., Ltd.*, 41 F.3d 229 (5th Cir. 1995) (applying the but-for principle).

[63] *Breathwit Marine Contractors, Ltd.*, 994 F. Supp. 2d at 852; *Gonzales v. Seadrill Americas, Inc.*, 2014 WL 2932241, at *6 (S.D. Tex. June 27, 2014); *FMC Intern. A.G. v. ABB Lummus Glob., Inc.*, 2005 WL 1745462, at *5 (S.D. Tex. July 22, 2005); *Spell v. Willbros USA, Inc.*, 2008 WL 2627718, at *3 (S.D. Tex. June 30, 2008).

[64] *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 319 n.8 (3d Cir. 2007); *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 430 (7th Cir. 2010).

[65] Jayne S. Ressler, *Plausibly Pleading Personal Jurisdiction*, 82 Temple L. Rev. 637 (2009).

[66] *Breathwit Marine Contractors, Ltd.*, 994 F. Supp. 2d at 851 (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 319 (3d Cir. 2007)).

[67] *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001).

[68] *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).

The Fifth Circuit has stated, "[t]his circuit has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues."[69]

The Supreme Court in *Daimler*[70] recently clarified the nature and contours of general jurisdiction, ultimately holding that corporations are generally only "at home" in their state of incorporation and the state of their principle place of business.[71] The ostensible basis for this limiting principle is two-fold. First, the Supreme Court was seeking a general jurisdiction principle that pointed to concrete—"ascertainable"—geographical locations.[72] Second, the Supreme Court sought a *limiting* principle, one that would point to "unique"[73] (*i.e.*, discreet) forums and that would not result in "exorbitant"[74] and "unacceptably grasping"[75] jurisdiction over corporate defendants nationwide.

Thus, systematic corporate activities "of some sort"[76] within the forum, including systematic business transactions,[77] are not enough to establish general jurisdiction. If they were, many corporate defendants would be subject to the personal jurisdiction of courts *in all fifty states*. Besides generating "exorbitant" and "unacceptably grasping" nationwide jurisdiction, this would undue the Supreme Court's longstanding aim of permitting corporate defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."[78] Consequently, it is not enough that a corporate defendant "engages in a substantial, continuous, and systematic course of business" in the forum state—this

---

[69] *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 611 (5th Cir. 2008); *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (stating that the test for general jurisdiction is "incredibly difficult" to meet).
[70] *See Daimler*, 134 S. Ct. at 750.
[71] *Id.* at 760.
[72] *Id.*
[73] *Id.*
[74] *Id.* at 751.
[75] *Id.* at 761.
[76] *Id.* at 757.
[77] *Id.*
[78] *Id.* at 762 (quoting *Burger King Corp.*, 471 U.S., at 472).

alone the *Daimler* Court expressly rejected.[79] Rather, the corporate defendant's connections with the forum state must be such that they render the corporation effectively at home in the forum state. This analysis can only be conducted by analyzing the corporate defendant's activity in the forum state *compared and contrasted with their own activity in other locations*. Thus, "[g]eneral jurisdiction calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them."[80] In sum, the general jurisdiction test is "incredibly hard"[81] to meet.

Regardless of whether the Court is conducting a specific or general jurisdiction analysis, the guiding principle is the same: for Due Process purposes, "minimum contacts" exist when the defendant's "conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."[82] With all this in mind, the Court now turns to its analysis.

## IV.  LEGAL ANALYSIS

### A.   *Limited scope of the Court's analysis*

Before launching into its substantive analysis, the Court makes some general observations about the scope of its analysis, as well as the scope of relevant supporting materials offered by Plaintiffs. As previously noted, Plaintiffs bear the initial burden to establish a prima facie case of specific or general jurisdiction.[83] The Court may consider non-conclusory, uncontradicted allegations contained within Plaintiffs' pleading, as well as any recognized

---

[79] *Id.* at 761.

[80] *Nana Joes, LLC v. Microbiotic Healthfoods, Inc. d/b/a Nana's Cookie Co.*, 2018 WL 905531, at *3 (E.D. Tex. Feb. 15, 2018) (quoting *Daimler*, 134 S. Ct. at 762 n.20).

[81] *Johnston*, 523 F.3d at 611; *Monkton Ins. Services, Ltd.*, 768 F.3d at 432 (stating that the test for general jurisdiction is "incredibly difficult" to meet).

[82] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980).

[83] *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

method of discovery.[84] Importantly, only *Defendants' conduct in Texas* is relevant to the present analysis.

Here, Plaintiffs' petition provides no indication of what specific acts Defendants committed in Texas.[85] Thus, Plaintiffs' petition is incapable of supporting personal jurisdiction, and can be disregarded. Otherwise, Plaintiffs only submit a single, two-page affidavit to carry their burden.[86] This affidavit has the same general deficiency as the petition. For example, it indicates that Defendants called Decedent to solicit his business,[87] gifted him vacations,[88] offered him discounts,[89] extended him credit,[90] and also that the Venetian placed one debt collection call to Decedent.[91] However, all of these allegations fail to explain *where these actions took place*. The only allegation that does so is as follows: "All named defendants sent corporate jets to McAllen, Texas on numerous occasions. The private jets were sent specifically for my husband."[92] Thus, the only question for the Court is whether this particular allegation is capable of supporting either specific or general jurisdiction.

Even this sole remaining allegation fails to support personal jurisdiction. As previously noted, supporting allegations may not be "vague," "overgeneralized," or "conclusory."[93] To this end, a plaintiff must submit evidence supporting personal jurisdiction over each defendant, and

---

[84] *See TransFirst Group, Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 451 (N.D. Tex. 2017); *see also Drake v. Costume Armour, Inc.*, 2017 WL 4221143, at *2 (S.D. Tex. Sept. 6, 2017), report and recommendation adopted, 2017 WL 4221088 (S.D. Tex. Sept. 21, 2017), reconsideration denied, 2017 WL 4564929 (S.D. Tex. Oct. 11, 2017).
[85] *See* Dkt. No. 1-2.
[86] *See* Dkt. Nos. 12-1, 13-1, and 14-1. Plaintiffs employ the same affidavit to support their responses to all three of Defendants' dismissal motions.
[87] Dkt. No. 12-1 ¶ 6.
[88] *Id.* ¶ 7.
[89] *Id.* ¶ 9.
[90] *Id.* ¶¶ 4 & 8.
[91] *Id.* ¶ 10.
[92] *Id.* ¶ 5.
[93] *See Suckafree Records v. OarFin Distribution*, 2013 WL 12158149, at *7 (S.D. Tex. May 7, 2013); *Blue Spike, LLC v. Texas Instruments, Inc.*, 2014 WL 11858192, at *4 (E.D. Tex. Mar. 18, 2014); *Bar Group, LLC v. Bus. Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, 561 (S.D. Tex. 2017).

cannot simply lump them all altogether.[94] Plaintiff's remaining allegation does just this: "All named defendants sent corporate jets to McAllen, Texas on numerous occasions."[95] This statement is conclusory because it provides no details explaining exactly who sent jets, when, and how often. It is also overgeneralized, vague, and lumps all the defendants together. Thus, even Plaintiffs' sole remaining supporting allegation fails. Nevertheless, and for thoroughness sake, the Court proceeds to analyze the remaining allegation as though it did not necessarily fail.

### B.    *There is no specific jurisdiction*

Sheri Head alleges that Defendants "sent corporate jets to McAllen, Texas on numerous occasions. The private jets were sent specifically for my husband."[96] This allegation fails to satisfy the first element of the Fifth Circuit's specific jurisdiction test—purposeful availment. Defendants' contacts with Texas were based on the mere fortuity that Decedent lived in Texas; they never would have sent jets to Texas for Decedent if Decedent lived in Florida or Alaska. Thus, Defendants did not *purposefully avail* themselves of the benefits and privileges of Texas, and could not reasonably foresee that they would be haled into Texas courts for IIED and wrongful death claims arising from Decedent's subsequent decision to kill himself. In sum, Defendants' contacts with Texas were "random, fortuitous, and attenuated,"[97] and thus incapable of supporting specific jurisdiction.

Sheri Head's allegation also fails to satisfy the second element of specific jurisdiction— that the plaintiff's claim arises out of the foreign defendant's in-forum conduct. Simply put, Plaintiffs allege so many different ways in which Defendants enticed Decedent to gamble, that it

---

[94] *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").
[95] Dkt. No. 12-1 p. 2, ¶ 5.
[96] *Id.*.
[97] *See e.g., Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

is impossible to say jet transportation from Texas to Las Vegas—alone—was a but-for cause of Plaintiffs' IIED and wrongful death claims. Consider the following alleged enticements that have no expressed connection with Texas:

- My husband was a heavy gambler at the casinos . . . *for many years*;[98]

- Throughout this time, the casinos extended lines of credit on multiple occasions;[99]

- My husband was repeatedly contacted . . . . The purpose of the telephone calls ranged from soliciting his business, offering rebates, and making personal invitations to vacation resorts or blackjack tournaments;[100]

- Every casino, except MGM, gifted my husband numerous vacation trips including vacations to Alaska, Cabo San Lucas, and the 2012 London Olympics;[101]

- Despite heavy losses, the casinos continued to give my husband additional lines of credit;[102]

- To retain his business, the casinos often offered "customer retention discounts" which totaled well over ($) 1 million dollars;[103]

- My husband received a collections phone call from the Venetian;[104]

- [Defendants offered] free luxurious accommodations, gifted luxury items, free vacations for friends and family, food, and beverages, in addition to other incentives;[105]

- Defendants knew [Decedent] exhibited signs of a problem gambler, yet continued to extend him large credit lines which encouraged [D]ecedent to gamble for large periods of time and for high stakes;[106]

- [Defendants failed] to implement policies and procedures regarding extending large amounts of credit to problem gamblers;[107]

---

[98] Dkt. No. 12-1 ¶ 3 (emphasis added).
[99] *Id.* ¶ 4.
[100] *Id.* ¶ 6.
[101] *Id.* ¶ 7.
[102] *Id.* ¶ 8.
[103] *Id.* ¶ 9.
[104] *Id.* ¶ 10.
[105] Dkt. No. 1-2 p. 8.
[106] *Id.* p. 9.
[107] *Id.* p. 11.

- [Defendants failed] to properly train and supervise its employees to recognize and determine signs of problem gamblers;[108]

- [Defendants failed] to enact or enforce adequate and/or reasonable measures to protect customer from becoming financially decimated;[109] and

- Appropriate and even minimally adequate scrutiny of [Decedent's] finances and problem gambling history would have led Defendants to conclude that an obvious consequence of extending him millions of dollars in credit and/or loans to lose in the casinos would be financially disastrous and cause him great mental stress and anguish, or the Defendants chose to willfully ignore the issue due to their own greed.[110]

Amongst this mass of non-Texas-specific allegations giving rise to Plaintiffs' claims lies air transportation from Texas to Las Vegas. It is difficult to imagine that Decedent would have ceased to gamble (and thus not gone into debt, become distressed, and committed suicide) in the absence of casino-provided air transportation to Las Vegas. No doubt, the aforementioned enticements (i.e. over $1 million in discounts, free vacations, food, drinks, and accommodations etc.) would have been enough to attract any gambling addict to Las Vegas. Perhaps Decedent would have purchased his own plane tickets or driven a car. Plaintiffs bear the burden to establish a prima facie case of specific jurisdiction, and thus bear the burden to prove their claims would not have arisen but for casino-provided air transportation from Texas to Las Vegas. They have not.

Plaintiffs' briefing mischaracterizes the nature of Sheri Head's affidavit in an attempt to advance their theory of specific personal jurisdiction. They suggest Defendants:

contacted the decedent *in McAllen, Texas* through calls to his personal cell phone made for the purposes of soliciting his repeat business, offering rebates, and personally inviting him to vacation resorts or blackjack tournaments; gifting the decedent numerous vacations, including trips to Alaska, Cabo San Lucas, and the

---

[108] *Id.*
[109] *Id.*
[110] *Id.*

2012 London Olympics; and offering him substantial "customer retention" discounts on multiple occasions.[111]

However, Sheri Head's affidavit does not specify *where* any of Defendants' aforementioned conduct took place. Thus, the allegations in Plaintiffs' briefing are not supported by Sheri Head's affidavit, and in turn do not support specific personal jurisdiction over Defendants.

In sum, Plaintiffs have failed to establish a prima facie case of specific jurisdiction because they fail to prove up the first two elements of specific jurisdiction. Generally speaking, Plaintiffs' have not set forth cognizable allegations of Defendants' forum-related conduct from which Defendants could reasonably anticipate being haled into Texas courts for IIED or wrongful death via Decedent's suicide. There is no specific jurisdiction here.

### C.     *There is no general jurisdiction*

There is also no general jurisdiction in this case. As a starting point, Defendants are not Texas residents. The corporate defendants are not incorporated in Texas, and they do not have their principle place of business in Texas either.[112] The defendants in this case that are unincorporated associations do not appear to have any members in Texas.[113] Thus, Defendants are not "at home" in Texas by virtue of their residency. In turn, Plaintiffs must prove this case fits into a "small, undefined category of other situations in which a foreign corporation is nonetheless 'essentially at home' in a forum."[114] Plaintiffs fail to do so.

As noted, Plaintiffs only provide evidence that Defendants "sent corporate jets to McAllen, Texas on numerous occasions. The private jets were sent specifically for my

---

[111] Dkt. No. 12 p. 4, ¶ 9 (emphasis added); Dkt. No. 13 p. 4, ¶ 9; Dkt. No. 14 p. 4, ¶ 9 (Plaintiffs responses set forth substantially the same allegations against each Defendant).

[112] *See* Dkt. No. 5-2 p. 2, ¶ 6 (concerning MGM Resorts); Dkt. No. 6-1 p. 2, ¶ 3 (concerning Caesar's Palace); Dkt. No. 6-1 p. 2, ¶ 5 (concerning Harrah's); Dkt. No. 6-1 p. 2, ¶ 6 (concerning Caesar's Entertainment).

[113] *See* Dkt. No. 4-1 (concerning the Venetian); Dkt. No. 5-1 (concerning MGM Hotel); Dkt. No. 6-1 p. 2, ¶ 4 (concerning Desert Palace); *see also* Dkt. No. 6-1 p. 2, ¶ 5 (concerning HTM Holding, LLC, which Harrah's was converted into on September 25, 2017).

[114] *Munro v. Lucy Activewar, Inc.*, 2016 WL 4257750, at *4 (W.D. Tex. Jan. 14, 2016) (citing *Gonzales v. Seadrill Americas, Inc.*, 2014 WL 2932241, at *3 (S.D. Tex. June 27, 2014)).

husband."[115] Sheri Head does not indicate how many times jets were actually sent to Texas. Thus, this allegation barely qualifies as a business contact. Even if it was a business contact, it does not constitute a substantial, continuous, and systematic business contact. And even if it did, it does not contain that X-factor which goes above and beyond mere business activity to render Defendants "at home" in Texas. Put plainly, Defendants could not reasonably anticipate being haled into Texas courts (for all purposes) for sending an unknown number of jets to Texas with regard to a single individual. Thus, there is no general jurisdiction in this case.

Plaintiffs allege certain Texas connections in their briefing without providing any evidentiary support for these allegations. Because these allegations are not contained in Plaintiffs' petition, nor supported by evidence, they are not cognizable, and cannot support personal jurisdiction over Defendants. Even if they were cognizable statements, they would make no difference. The alleged Texas connections are:

- Promotional emails offering discount codes, rebates, and special offers

- Transacting business with Texas citizens by allowing them the opportunity to select and purchase hotel rooms, show ticket, and other amenities;

- The casino websites allow Texas citizens the opportunity to apply online for lines of credit with the casino;

- Texas citizens can fill out applications disclosing detailed bank account and credit information that then allows the casino to determine whether to extend a line of credit;

- Through the internet application, Texas citizens are able to enter into a binding contractual agreement with the casinos without having to travel to Las Vegas. The casinos then have the authority and ability to deposit money into, transfer money out of, or receive money from the Texas citizen's bank account; and

- In addition to the line of credit applications, the casinos' websites also allow Texas citizens to play slot machine games from their homes and win

---

[115] Dkt. No. 12-1 ¶ 5.

points toward free hotel rooms, meals, entertainment, or other amenities at the casino.[116]

These (unsupported) allegations demonstrate little more than general business in Texas. As noted, general business contacts with a forum—even substantial, continuous, and systematic business contacts—are not enough to establish general jurisdiction over a defendant. If they were, then corporate defendants would often be subject to nationwide jurisdiction—directly contradicting the fundamental principle of *limited* personal jurisdiction set forth in *Daimler*. Instead, Defendants' activities in Texas must be cross-referenced with Defendants' activities in other jurisdictions in order to develop an understanding of where Defendants' energies are truly and relatively focused,[117] and thus where they may properly be considered "at home." Plaintiffs do not provide any such information, thus failing to carry their burden and depriving the Court of information necessary to make a finding of general jurisdiction.

Certain of the aforementioned Texas contacts arise from Defendants' websites, which presumptively have nationwide reach. Plaintiffs cite no cases which support a finding of general jurisdiction in this context. The Court is left to its own devices in this regard.

Recent case law within the Fifth Circuit appears to uniformly hold that mere internet presence within a forum does not generate general jurisdiction.[118] The bases for this progeny of

---

[116] Dkt. No. 12 p. 9, ¶ 21; Dkt. No. 13 p. 9, ¶ 21; Dkt. No. 14 p. 9, ¶ 21.

[117] *See Nana Joes, LLC v. Microbiotic Healthfoods, Inc. d/b/a Nana's Cookie Co.*, 2018 WL 905531, at *3 (E.D. Tex. Feb. 15, 2018) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 762 n.20 (2014)).

[118] *See e.g.*, *Locke v. Ethicon Inc.*, 58 F. Supp. 3d 757, 764 (S.D. Tex. 2014) (involving websites "designed to market their mesh products nationwide."); *Nana Joes, LLC*, 2018 WL 905531, at *3 (involving website used to do business and enter into contracts with Texas residents); *Munro v. Lucy Activewar, Inc.*, 2016 WL 4257750, at *4 (W.D. Tex. Jan. 14, 2016) (involving website marketing); *Britton v. City of Dubuque*, 2015 WL 2384397, at *6 (W.D. Tex. May 18, 2015) (involving websites that can be accessed inside and outside of Texas); *Evans v. Johnson & Johnson*, 2014 WL 7342404, at *5 (S.D. Tex. Dec. 23, 2014) (finding internet presence in Texas alone does generate general jurisdiction because this would be a basis for nationwide jurisdiction, which was rejected in *Daimler*.); *Javeler Marine Services, LLC v. Cross*, 2014 WL 6886097, at *5 n.5 (S.D. Tex. Dec. 4, 2014); *Glazier Group, Inc. v. Mandalay Corp.*, 2007 WL 2021762, at *10 (S.D. Tex. July 11, 2007) (citing numerous cases outside the Fifth Circuit); *Doe v. Compact Info. Sys., Inc.*, 2014 WL 4801264, at *7 (N.D. Tex. Sept. 24, 2014) (involving "websites which describe it as a nationally recognized company who provides automotive service contracts direct to consumers.").

related cases is tri-fold. *First*, the existence of a website falls squarely outside the "paradigm" locations of a corporation's home—its principle place of business and state of incorporation.[119] Indeed, *Daimler*, which crystalized this "paradigm," was published in 2014, and easily could have included website presence. It did not. Thus, in light of *Daimler*, there appears to be a strong presumption amongst courts that a corporation's paradigm homes are its *only* homes, absent clear authority to the contrary. Courts thus generally appear unwilling to depart from the *Daimler* paradigms, even in the context of website presence.

*Second*, Courts—including the Fifth Circuit—have indicated that websites are "not well adapted to the general jurisdiction inquiry, because even repeated contacts with the forum residents by a foreign defendant may not constitute contacts required for a finding of general jurisdiction—in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas."[120] Thus, website presence in a forum is simply a business contact with the state—just like any other. It is not special. And just like any other business contact with a forum state, it must be analyzed in conjunction with the corporate defendant's overall presence and activity in the forum state relative to its presence and activity in other forums to determine whether the defendant is uniquely and specially "at home" there. Thus, just as a finding of general jurisdiction is rare in other contexts, so too it is rare in the context of website presence.

*Third*, and importantly, at least one district court has indicated that if mere internet presence alone could generate general jurisdiction, then it would produce unacceptably grasping

---

[119] *Locke*, 58 F. Supp. 3d at 765 (Plaintiffs have not "substantiated their claim that the defendants' websites constitute an exception to the general jurisdiction paradigms."); *Nana Joes, LLC*, 2018 WL 905531, at *3 ("A corporation is deemed at home in its place of incorporation and its principle place of business. Defendant is a California corporation with its principle place of business in California. Defendant's website activity does not render Defendant "at home" in Texas. Accordingly, Plaintiff has not met its burden to establish a prima facie case of general jurisdiction.").

[120] *See e.g.*, *Nana Joes, LLC*, 2018 WL 905531, at *3 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)); *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014); *Doe*, 2014 WL 4801264, at *7.

nationwide jurisdiction—directly contrary to the limiting principles found in *Daimler*.[121] In turn, corporate defendants would not be able to structure their business with minimum assurance about where they are subject to suit[122]—also against long-standing Supreme Court precedent. This Court agrees. For these reasons, recent case law within the Fifth Circuit indicates that mere internet presence within Texas does not typically generate general jurisdiction.

Outdated Fifth Circuit case law complicates matters a bit. In 1999, and fifteen years prior to *Daimler*, the Fifth Circuit in *Mink* first addressed websites in the personal jurisdiction context.[123] There, the Fifth Circuit adopted a sliding-scale approach from a district court in Wisconsin.[124] Under that test (*i.e.*, the *Zippo* sliding scale test), internet presence in a state *might* generate general jurisdiction:

> The *Zippo* decision categorized Internet use into a spectrum of three areas. [1] At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet . . . . In this situation, personal jurisdiction is proper. [2] At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. [3] In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website.

Three years later, the Fifth Circuit recognized its adoption of the *Zippo* sliding scale in *Revell*.[125] However, the *Revell* Court dulled the language of the test[126] and warned that the *Zippo* sliding

---

[121] *Evans*, 2014 WL 7342404, at *5.

[122] *Id.*

[123] *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999).

[124] *Id.* (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

[125] *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).

[126] *See Mink*, 190 F.3d at 336. The *Mink* Court described the *Zippo* sliding scale test such that internet presence involving substantial interaction and concrete business activity *automatically* generates personal jurisdiction: "The *Zippo* decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet. In this situation,

scale is categorically ill-adapted "to the general jurisdiction inquiry."[127] Tellingly, the Fifth Circuit does not appear to have *ever* found personal jurisdiction on the basis of internet presence, and has specifically declined to do so at least ten times since issuing *Mink* in 1999.[128] Moreover, the previously-cited avalanche of district court cases[129] followed suit. The most likely reason for this lop-sided jurisprudence is found in *Daimler* itself—the principle of *limited* jurisdiction. Indeed, if a forum has jurisdiction over a foreign defendant merely because of its highly interactive and transaction oriented web pages, then the same defendant is likely subject to the coercive authority of every state in the union. This cannot be right.

It would not be unreasonable to question the continued validity of *Mink* in the wake of *Daimler*. However, this Court need not do so here. The *Revell* Court reined in *Mink*, specifying that even if the webpage in question is substantially interactive and transaction-oriented, it "may"[130] form the basis for general jurisdiction, meaning that it would not necessarily demand a finding of general jurisdiction. The *Revell* Court confirmed this by explaining that the *Zippo* sliding-scale test "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction."[131] In other words, web-pages are not unique forms of business contact that require special treatment. They

---

personal jurisdiction *is* proper.") (emphasis added); *contrast with Revell v. Lidov*, 317 F.3d at 470. The *Revell* Court altered its language from *Mink* such that general jurisdiction (regardless of the nature of the internet page) is always *conditional*: "At the other end are sites whose owners engage in repeated online contacts with forum residents over the internet, and in these cases personal jurisdiction *may* be proper." (emphasis added).

[127] *Revell v. Lidov*, 317 F.3d at 471.

[128] *See Mid City Bowling v. Ivercrest Inc.*, 208 F.3d 1006 (5th Cir. 2000); *S. Copper, Inc. v. Specialloy, Inc.*, 245 F.3d 791 (5th Cir. 2000); *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 345 (5th Cir. 2002); *Revell*, 317 F.3d at 471; *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 n.4 (5th Cir. 2003); *R & B Falcon Drilling (Intern. & Deepwater), Inc. v. Noble Denton Group*, 91 Fed. Appx. 317, 321 (5th Cir. 2004); *McFadin v. Gerber*, 587 F.3d 753, 762 (5th Cir. 2009); *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 228 (5th Cir. 2012); *Ward v. Rhode*, 544 Fed. Appx. 349, 353 (5th Cir. 2013); *Bowles v. Ranger Land Sys., Inc.*, 527 Fed. Appx. 319, 322 (5th Cir. 2013).

[129] *See supra* note 118.

[130] *Revell*, 317 F.3d at 470.

[131] *Id*. at 471.

must be considered alongside all of the foreign defendant's forum contacts to determine whether or not the defendant is uniquely and specially "at home" in the forum state. This comports with the principle of limited jurisdiction articulated in *Daimler*.

With this in mind, Defendants' alleged website presence in Texas does not give rise to general jurisdiction. Plaintiffs offer no evidence of Defendants' website presence in other states, making it impossible to determine whether Defendants' relationship with and contact in Texas is somehow unique.[132] For this reason alone, Plaintiffs have not carried their burden.[133] Moreover, insofar as Defendants' website presence in Texas amounts to simple advertising, courts have expressly rejected such as a basis for general jurisdiction.[134] Furthermore, insofar as Defendants' website presence in Texas results in contract formation in Texas, post-*Daimler* district opinions within the Fifth Circuit have expressly rejected such as a basis for general jurisdiction.[135] Plaintiffs have not otherwise born their burden of proving a prima facie case of general jurisdiction.

In sum, Plaintiffs have failed to establish a prima facie case of personal jurisdiction. Plaintiffs' case for specific jurisdiction rests upon the lone allegation that Defendants sent jets to Texas for Decedent an undisclosed number of times. This allegation is vague, conclusory, overgeneralized, and fails to distinguish between each Defendant. This contact was also the mere fortuitous result of Decedent's residency, so Defendants did not purposefully avail themselves of the benefits and privileges *of Texas*, and could not reasonably foresee being haled into Texas

---

[132] *See Nana Joes, LLC v. Microbiotic Healthfoods, Inc. d/b/a Nana's Cookie Co.*, 2018 WL 905531, at *3 (E.D. Tex. Feb. 15, 2018) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 762 n.20 (2014)).

[133] Plaintiffs' request for jurisdictional discovery did not suggest they would seek this information, or that any such information would help their cause.

[134] *See e.g.*, *Locke v. Ethicon Inc.*, 58 F. Supp. 3d 757, 765 (S.D. Tex. 2014); *Munro v. Lucy Activewar, Inc.*, 2016 WL 4257750, at *4 (W.D. Tex. Jan. 14, 2016) (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir. 1987)).

[135] *See Nana Joes, LLC*, 2018 WL 905531, at *3; *Doe v. Compact Info. Sys., Inc.*, 2014 WL 4801264, at *7 (N.D. Tex. Sept. 24, 2014).

courts at all, and particularly for Plaintiffs' IIED and wrongful death claims. Moreover, Plaintiffs have not proven that casino-provided transportation to Las Vegas was a but-for cause of their legal claims, as required in the Fifth Circuit. Indeed, this notion is belied by the numerous other allegations giving rise to Plaintiffs' claims. Finally, Plaintiffs mischaracterize the wording of Sheri Head's affidavit in an attempt to enlarge the number of Defendants' Texas-based contacts.

Plaintiffs have also failed to establish a prima facie claim of general jurisdiction. The sole allegation that Defendants sent jets to Texas is prima-facie invalid to support all-purpose jurisdiction. Nothing about this contact renders Defendants "at home" in Texas. Plaintiffs' briefing provides unsupported jurisdictional allegations that are not cognizable. Even if the Court were to consider them, including those related to website presence in Texas, they would not suffice to render Defendants "at home" in Texas for personal jurisdiction purposes.

Because Plaintiffs have failed to establish a prima facie case of personal jurisdiction, there is no need to address Defendants' contention that personal jurisdiction would be contrary to fair play and substantial justice.[136]

### V.   HOLDING

Defendants' motions to dismiss for lack of personal jurisdiction[137] are **GRANTED**. Accordingly, this case is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 27th day of March, 2018.

Micaela Alvarez
United States District Judge

---

[136] *See* Dkt. No. 4 pp. 8–10; Dkt. No. 5 pp. 14–15; Dkt. No. 6 pp. 7–8.
[137] Dkt. Nos. 4–6.